UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RUFUS L. SPEARMAN,

                Plaintiff,                    Case No. 2:15-cv-15

v.                                     Honorable Robert Holmes Bell

DANIEL H. HEYNS, et al.,

                Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Heyns, Russell, Kinross Complex Store Employees Unknown Party, Rapelje, Winn, Zummer, Machulis, Norman, Bauman, Immel, Lesatz, Sprader, Lindenmuth, Nelson, Konrad, Salo, Harris, Denman, Hoffman, Trierweiler, Maki, Rutter, O'Dell, Hursch, Livermore, Miron, Parkilla, Price, Weberg, Bohm, Cobb, Perala, Kurth, Palomaki, Lare, Deatsman,

Mattson, Heyrman, Anderson, Jaykka, Bowerman, Barney, Vanderscheagan, Wilkins, Lancour, Ross, Holman, Nietzel, Access Secure Pak, Alger County, JPay, and Unknown Parties responsible for Prisoner Trust Accounts.  The Court will serve the complaint against Defendants Gerth, Young, Schertz, Thoma, Henley, Miles, and Fielding.

## Discussion

I.     Factual allegations

Plaintiff Rufus L. Spearman, a state prisoner currently confined at the Chippewa Correctional Facility (URF), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants MDOC Director Daniel H. Heyns, Grievance Manager and Misconduct Hearings Administrator Richard D. Russell, Kinross Complex Store Employees Unknown Party Jane Doe, Warden Loyd W. Rapelje, O.J. Winn, Resident Unit Manager J. Zummer, Quartermaster Mark Machulis, Sr., Assistant Resident Unit Supervisor D. Norman, Warden Catherine S. Bauman, Deputy Warden Unknown Immel, Deputy Warden Dan Lesatz, Assistant Deputy Warden Scott Sprader, Resident Unit Manager Tammi Lindenmuth, Resident Unit Manager K. Nelson, Resident Unit Manager Cheri Konrad, Assistant Resident Unit Supervisor T. Salo, Assistant Resident Unit Supervisor R. Harris, Assistant Resident Unit Supervisor D. Gerth, PC Jill Denman, Classification Director Unknown Hoffman, Grievance Coordinator W. Trierweiler, Hearing Officer L. Maki, Inspector Unknown Rutter, Lieutenant Unknown O'Dell, Lieutenant B. Hursch, Sergeant R. Livermore, Sergeant L. Miron, Sergeant Unknown Parkilla, Sergeant Unknown Price, Corrections Officer Unknown Weberg, Corrections Officer Unknown Bohm, Corrections Officer Unknown Cobb, Corrections Officer Unknown Henley, Corrections Officer Unknown Perala, Corrections Officer Unknown Kurth, Corrections Officer Unknown Palomaki, Corrections Officer Unknown

Lare, Corrections Officer C. Deatsman, Corrections Officer Unknown Mattson, Corrections Officer Unknown Heyrman, Corrections Officer Unknown Miles, Corrections Officer Unknown Anderson, Corrections Officer Unknown Jaykka, Corrections Officer Unknown Bowerman, Corrections Officer Unknown Barney, Corrections Officer Unknown Vanderscheagan, Corrections Officer Unknown Wilkins, Corrections Officer J. Lancour, Corrections Officer Unknown Young, Corrections Officer Unknown Schertz, Corrections Officer Unknown Thoma, Corrections Officer Unknown Fielding, Corrections Officer Unknown Ross, Corrections Officer Unknown Holman, Corrections Officer Unknown Nietzel, Access Secure Pak, Alger County, JPay, and Unknown Parties responsible for Prisoner Trust Accounts.

In Plaintiff's complaint, he alleges that on March 5, 2012, while he was housed at the Saginaw Correctional Facility (SRF), he was sexually propositioned by Defendant Machulis during a quartermaster appointment to exchange clothing. When Plaintiff rebuffed the unwanted advance, Defendant Machulis wrote a fraudulent misconduct report on Plaintiff, asserting that Plaintiff had threatened him. When Plaintiff returned to his unit, Plaintiff telephoned the U.S. Department of Justice to initiate a complaint against Defendant Machulis. While on the phone, Plaintiff was ordered to return to his cell and was placed on top-lock. About one hour later, Plaintiff was placed in handcuffs and escorted to segregation.

After three days in segregation, Plaintiff asked Defendant Nietzel for access to his legal and personal property. After a day or two, Plaintiff asked Defendant Nietzel why he had not received his property. Defendant Nietzel stated that he had given the request to Defendant Zummer. On March 11, 2012, Plaintiff filed a grievance regarding his property, asserting retaliation and denial

of access to the courts.  Defendants Winn and Zummer reviewed Plaintiff's grievance, which was denied.  Plaintiff's step II appeal was denied by Defendant Rapelje.

On March 12, 2012, Hearing Officer Groat found Plaintiff guilty of the threatening behavior misconduct without any investigation being performed.  Plaintiff claims that the withholding of his legal property prevented him from formulating a defense to the misconduct ticket or from filing a meritorious appeal.  Plaintiff was released from segregation on April 11, 2012.  On April 12, 2012, Defendant Norman completed a security classification screen and recommended that Plaintiff be transferred.  On April 16 or 17 of 2012, Defendant Zummer told Plaintiff that where he was going he was either going to "lose [his] will to write and complain . . . or become one prolific writer."  Plaintiff was transferred to LMF.

Upon Plaintiff's arrival at LMF, he asked Defendants Lesatz and Sprader why he had been transferred.  When Plaintiff told Defendant Lesatz that he had written a grievance regarding the denial of his legal property while in segregation at SRF.  Defendant Lesatz stated "Oh, then that's why they got rid of you."  When Plaintiff stated that such conduct was not allowed, Defendant Lesatz stated that it was done all the time and that he was currently trying to decide whether to send Plaintiff to administrative segregation.  Plaintiff was initially housed with an inmate named Love, who subjected Plaintiff to psychological intimidation.

On the date of Plaintiff's arrival at LMF, he was accosted by Defendant Miles, who ordered Plaintiff to sit down.  When Plaintiff asked why, she said "because I said so."  Plaintiff asked for a grievance form and returned to his assigned room.  Defendant Miles wrote a misconduct on Plaintiff for refusing to sit down.  Defendant O'Dell conducted a hearing and found Plaintiff guilty of the misconduct, despite the fact that there had been no investigation.

Plaintiff states that over the course of nineteen months, he was housed in various units at LMF and was subjected to unsafe or unsanitary living conditions, harassment, discrimination, physical and sexual assaults, coercion, retaliation, and destruction and confiscation of property. Plaintiff wrote at least sixteen letters to MDOC officials and other state officials complaining of prison conditions. Plaintiff also filed at least twenty grievances. Plaintiff claims that at one point, Defendant Miles entered his cell, rummaged through his property, and exposed Plaintiff's belongings in order to allow Plaintiff's cell mate to search his stuff and discover paperwork showing that Plaintiff had informed to prison officials on other inmates. Plaintiff alleges that Defendants Miles and Henley claimed to be robbing a "ghost" bank account of Plaintiff's and that they physically assaulted Plaintiff with his cell door.

On May 4, 2012, Plaintiff sent a letter to Defendants Konrad and Harris regarding his retaliatory transfer claim. Plaintiff did not receive a response to this letter. Later that evening, Defendants Deatsman and Mattson wrote a false misconduct on Plaintiff for showering longer than the allotted time period. Plaintiff demanded that the security footage be reviewed and filed a grievance. Plaintiff sent a request for single occupancy housing to Defendants Konrad and Harris, citing a lack of security and unsanitary conditions. On May 15, 2012, Defendant Deatsman found Plaintiff guilty of the shower misconduct. On June 3, 2012, after Plaintiff filed a complaint regarding the misconduct conviction, Defendant Deatsman issued another fraudulent misconduct report and refused to allow Plaintiff to shower. On June 6, 2012, staff deliberately discarded Plaintiff's store list, which deprived him of store privileges.

On June 18, 2012, Defendant Miles entered Plaintiff's room to perform a shakedown and left Plaintiff's personal and legal property unsecured. When Plaintiff returned from yard, he

found his property unlocked and his cellmate alone with the property.  Plaintiff claims that his cellmate was a member of the same religious group as inmate Willoughby, who was Plaintiff's cellmate in 2013.  Plaintiff filed a complaint on this incident and on June 29, 2012, staff withheld the metered postage Plaintiff had purchased at the store.  On July 2, 2012, Defendant Mattson approached Plaintiff while he was eating dinner and asked to see Plaintiff's identification.  Plaintiff laid his ID card on the table and Defendant Mattson took it and left the area.  Plaintiff's ID card has never been returned to him.

On July 9, 2012, Defendant Fielding struck Plaintiff with his cell door as Plaintiff was leaving his cell for chow.  On July 12, 2012, Defendant Heyrman denied Plaintiff his shower because Plaintiff refused to use the shower area where he could be observed by Defendant Heyrman.  Approximately four days later, Plaintiff was transferred from Spruce Unit to Maple Unit.  On August 8, 2012, Defendant Miles was assigned to Maple Unit with Defendant Bowerman.  When Plaintiff asked Defendant Bowerman why the yard schedule was not posted, Defendant Bowerman responded by swearing at Plaintiff.  When Plaintiff asked her to stop cursing and requested a grievance form, Defendant Bowerman stated that no grievance forms were available.  Later that evening, Defendant Miles used the room door controls to slam the door shut onto Plaintiff's breastbone, pinning him between the door and the doorjamb.  Once freed from the door, Plaintiff asked to speak with a supervisor and Defendants Bowerman and Miles began to yell at him.  Defendant Bowerman refused to give Plaintiff his pre-paid store order.  Plaintiff asked to see health services, but was ordered to return to his cell.  Defendant Cobb then came to Plaintiff's cell and escorted him to segregation. Plaintiff was told that Defendant Bowerman had written a misconduct on him claiming that he had threatened her.

On August 14, 2012, Defendants Lesatz and Lindemuth classified Plaintiff to administrative segregation in "covert retaliation" for his litigious activities.  Plaintiff was in administrative segregation for more than five months.  Plaintiff claims that this was not warranted by his behavior.  On August 26, 2012, Defendant Heyrman was assigned to work in Plaintiff's segregation unit and subjected Plaintiff to verbal harassment.  On September 2, 2012, Plaintiff wrote to Defendant Rutter in order to complain about staff misconduct and seek help.  The next day, Defendant Barney withheld the law books that Plaintiff had ordered from the library.  On September 9, 2012, Plaintiff sent correspondence to the Legislative Ombudsman.  On September 11, 2012, Plaintiff filed a grievance on numerous prison officials, which was rejected as vague by Defendants Lesatz and Trierweiler.  Plaintiff unsuccessfully appealed the rejection to steps I and II.

On September 17, 2012, Plaintiff filed a grievance on Defendants Cobb and Parkilla for their failure to train and supervise Defendants Bowerman and Miles.  On September 27, 2012, Plaintiff filed a complaint on Defendant Trierweiler for unlawfully denying him access to the grievance procedure based on a number of previously rejected grievances that Plaintiff had filed.  On September 30, 2012, Plaintiff filed a grievance on Defendants Young, Schertz, Thoma, and Gerth asserting that they were denying him meals in retaliation for filing grievances.  Plaintiff asserts that this caused him to suffer from swelling in his joints, hands, feet, eyes, and tongue, as well as hunger pangs, distress, palpitations, fatigue, dizziness, fainting spells, migraines, blurry vision, and stomach convulsions.

On October 24, 2012, after several weeks of sexually propositioning Plaintiff, Defendant Schertz extracted Plaintiff from his cell in handcuffs and "began touching [Plaintiff] in an inappropriately sexual way."  When Plaintiff questioned him, Defendant Schertz "physically

abused" him and threatened to have him assaulted.  Defendant Gerth was present at the time, but failed to take any corrective action.

On January 9, 2013, Plaintiff was released from administrative segregation.  On January 31, 2013, staff entered Plaintiff's cell and destroyed a pair of state issued pants while Plaintiff was at recreation.  Plaintiff asked about the pants when he returned, but staff would not talk to him.  Staff also refused to allow Plaintiff to leave his cell so he could shower.  On February 11, 2013, Defendant Miles told Plaintiff that she was robbing his bank.  Plaintiff filed a complaint requesting an investigation.  Plaintiff's mother subsequently attempted to transfer funds to Plaintiff, and was charged $11.00 for the transfer.  Plaintiff did not receive the funds until March 5, 2013, one week after he filed a complaint against Defendant JPay on February 25, 2013.

Also on March 5, 2013, Plaintiff was sexually harassed by Defendants Henley and Miles.  Plaintiff claims that Defendant Henley deliberately rushed into Plaintiff's path in an attempt to bump into Plaintiff.  Plaintiff managed to avoid all but the slightest contact and asked what Defendant Henley was doing.  Defendant Henley told Plaintiff not to go getting all sensitive.  Defendant Miles began laughing and said, "Henley, you're crazy."  On March 12, 2013, Plaintiff filed a grievance against the MDOC complaining of overcrowding, decreased quantity and quality of food, inadequate ventilation and plumbing, excessive noise, and a gladiator like environment.

On May 11, 2013, Defendant Perala accosted Plaintiff by harassing him.  When Plaintiff objected, Defendant Perala ordered him to return to his cell without getting his meal.  On May 19, 2013, Plaintiff filed a grievance because he was feeling "overwhelmed" with being sexually harassed.  On June 27, 2013, Defendants Kurth and Palomaki subjected Plaintiff to further harassment.  On June 28, 2013, Plaintiff was deprived of shower privileges.  On June 29, 2013,

-8-

Defendant Ross deliberately disengaged the automatic locking mechanism to the door of Plaintiff's assigned room when letting Plaintiff out for breakfast. Plaintiff believes that this was done to allow another prisoner to either steal his property or to lie in wait for him in order to assault him. Plaintiff complained about the incident and on July 3, 2013, Defendant Kurth moved inmate Willoughby, a transferee from SRF, into Plaintiff's cell. After a couple of days, inmate Willoughby pulled his pants down and exposed his bare buttocks, telling Plaintiff that he had been sent to mess with Plaintiff so he would learn not to write grievances.

On July 7, 2013, Plaintiff attempted to notify Defendants Kurth and Palomaki of the incident with inmate Willoughby, but was told to "deal with it" and to "write a grievance." Plaintiff was ordered to return to his cell and was later issued a misconduct report for talking to staff without authorization. Inmate Willoughby later told Plaintiff that he worked for the Corrections Officers and that they were trying to break down his inhibitions. Over the next six weeks, Plaintiff was continuously accosted by inmate Willoughby, who rubbed up against him and touched Plaintiff without his consent. Plaintiff and inmate Willoughby had repeated skirmishes, and on one occasion, inmate Willoughby threatened Plaintiff with a razor blade. On August 3, 2013, inmate Willoughby began urinating on the toilet, as well as the adjacent walls and floor. Inmate Willoughby also used his hands to wipe urine on the door and surrounding walls while talking to someone in the hallway. When Plaintiff asked him about this behavior, inmate Willoughby just laughed.

Plaintiff states that sometime in July of 2013, he was hired as a law library clerk, but that his work schedule required him to miss at least one hour of exercise / out of cell recreation time. On August 3, 2013, Plaintiff filed a grievance regarding inmate Willoughby soiling the room with excrement. Plaintiff states that Defendants Lindenmuth, Denman, Kurth, Perala, and Holman were

all aware of the problem, but failed to take any corrective action.  On August 12, 2013, Plaintiff filed another grievance.  Plaintiff was subsequently transferred to a different unit in the prison and was roomed with an individual who "appeared to have been a past chronic / alcoholic, drug / addict and was living in deplorable conditions."  Plaintiff claims that the transfer was meant to harass him, rather than to assist him with his roommate issues.  Plaintiff wrote a letter of complaint to Defendant Harris, who did not respond.  On August 21, 2013, Defendant Mattson wrote a false misconduct report on Plaintiff for speaking to "others" while on his way to his work assignment.  Plaintiff asserts that he only spoke to another law library clerk regarding the law library carts.  On August 22, 2013, Defendant Hill refused to open Plaintiff's door so that he could attend a law library session.  On August 28, 2013, Plaintiff filed a grievance against Defendants Immel, Hoffman, and Heberg for denying Plaintiff due process during his misconduct hearings.  Plaintiff claims that Defendants Immel, Hoffman, and Heberg refused to review the security camera footage of the commons area, which would have shown that Plaintiff only spoke to the other law library clerk on the date in question.

On September 17, 2013, Plaintiff filed a grievance on Defendant Heberg for making "veiled retaliatory threats."  On September 20, 2013, Plaintiff filed a grievance on Defendant Berg for verbal harassment.  On September 23, 2013, Defendant Cobb ordered Plaintiff to shower next to a homosexual inmate at that inmate's request.  On October 4, 2013, Defendant Jaykka ordered Plaintiff to leave the dining hall before he had a chance to finish his meal.  On October 17, 2013, Defendant Berg briefly opened Plaintiff's cell door, but then closed it again before Plaintiff could exit for breakfast.  On October 31, 2013, Defendant Cobb destroyed Plaintiff's ac adaptor.  On December 18, 2013, Plaintiff submitted a claim against the State of Michigan for $999.99 for the

destruction of his ac adaptor.  Plaintiff has not yet received a reimbursement for his ac adaptor.  On November 18, 2013, Plaintiff was transferred to another facility.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments.  Plaintiff seeks damages and equitable relief.

II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the court notes that liability under Section 1983 must be based on more than merely the right to control employees. *Polk Co. v. Dodson*, 454 U.S. 312, 325-26 (1981); *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Thus, Section 1983 liability cannot be premised upon mere allegations of *respondeat superior*. *Monell*, 436 U.S. at 691; *Polk*, 454 U.S. at 325. A party cannot be held liable under Section 1983 absent a showing that the party personally participated in, or otherwise authorized, approved or knowingly acquiesced in, the allegedly unconstitutional conduct. *See e.g. Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989), *cert. denied*, 495 U.S. 932 (1990); *Hays v. Jefferson*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied* 469 U.S. 845 (1984).

Supervisory officials can be held liable for the acts of their subordinates only if plaintiff establishes that the supervisor failed to appropriately discharge his supervisory duties, and that this failure resulted in a denial or deprivation of plaintiff's federal rights. *See e.g. Leach*, 891 F.2d at 1246; *Hayes v. Vessey*, 777 F.2d 1149, 1154 (6th Cir. 1985). However, the failure of a

supervisor to supervise, control or train the offending employee is not actionable absent a showing that the official implicitly encouraged, authorized, approved or knowingly acquiesced in, or in some other way directly participated in, the offensive conduct. *Leach*, 891 F.2d at 1246. Such a claim requires, at a minimum, that the official had knowledge of the offending employee's conduct at a time when the conduct could be prevented, or that such conduct was otherwise foreseeable or predictable. *See e.g. Gibson v. Foltz*, 963 F.2d 851, 854 (6th Cir. 1992). In addition, plaintiff must show that defendant had some duty or authority to act. *See e.g. Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989) (lower level official not liable for shortcomings of building); *Ghandi v. Police Dept. of City of Detroit*, 747 F.2d 338, 351 (6th Cir. 1984) (mere presence at the scene is insufficient grounds to impose Section 1983 liability in the absence of a duty to act); *accord Hall v. Shipley*, 932 F.2d 1147 (6th Cir. 1991). In addition, merely bringing a problem to the attention of a supervisory official is not sufficient to impose such liability. *See Shelly v. Johnson*, 684 F. Supp. 941, 946 (W.D. Mich. 1987) (Hillman, C.J.), *aff'd* 849 F.2d 228 (6th Cir. 1988). Finally, supervisory liability claims cannot be based on simple negligence. *Leach*, 891 F.2d at 1246; *Weaver v. Toombs*, 756 F. Supp. 335, 337 (W.D. Mich. 1989), *aff'd* 915 F.2d 1574 (6th Cir. 1990).

Plaintiff has not alleged facts establishing that Defendants Heyns, Russell, Unknown Parties Kinross Store Employees, Rapelje, Winn, Bauman, Sprader, Nelson, Salo, Trierweiler, Hursch, Livermore, Miron, Parkilla, Price, Weberg, Bohm, Lare, Anderson, Vanderscheagan, Konrad, Harris, Rutter, Maki, Wilkins, Lancour, Access Secure Pak, County of Alger, and Unknown Parties Prisoner Trust Account Administrators were personally involved in the activity which forms the basis of his claim. In fact, Plaintiff fails to name the majority of these parties in the body of his complaint. The only roles that any of the above named Defendants had in this action involve the

denial of administrative grievances or the failure to act. Prison officials cannot be liable for such conduct under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Accordingly, the Court concludes that Plaintiff's claims against Defendants Heyns, Russell, Unknown Parties Kinross Store Employees, Rapelje, Winn, Bauman, Sprader, Nelson, Salo, Trierweiler, Hursch, Livermore, Miron, Parkilla, Price, Weberg, Bohm, Lare, Anderson, Vanderscheagan, Konrad, Harris, Rutter, Maki, Wilkins, Lancour, Access Secure Pak, County of Alger, and Unknown Parties Prisoner Trust Account Administrators are properly dismissed for lack of personal involvement.

Plaintiff claims that Defendant Machulis violated his Eighth Amendment rights when he sexually propositioned him. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th

-14-

Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim).  Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation.  *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault);

*accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider*, 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

If true, Defendant Machulis' conduct toward Plaintiff was reprehensible, but it does not rise to the level of an Eighth Amendment violation. Plaintiff does not allege that Defendant Machulis ever touched him or had any form of physical contact with him. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Therefore, Plaintiff's allegation fails to state an Eighth Amendment claim against Defendant Machulis.

Plaintiff also claims that his work schedule required him to miss at least one hour of exercise / out of cell recreation time, and that Defendants Lindenmuth, Denman, Kurth, Perala, and Holman were all aware of the problem, but failed to take any corrective action. Such allegations do not rise to the level of an Eighth Amendment violation, which prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981)). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

-16-

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  Plaintiff's allegations regarding his work schedule do not rise to this level.

Plaintiff also lists the following Eighth Amendment violations: Plaintiff contends that on June 3, 2012, Defendant Deatsman refused to allow him to shower.  On September 23, 2013, Defendant Cobb ordered Plaintiff to shower next to a homosexual inmate at that inmate's request, and states that Defendant Henley attempted to "bump" into Plaintiff in order to harass him on March 13, 2013.  Plaintiff alleges that Defendant Perala ordered Plaintiff to leave chow hall before he ate on May 11, 2013, that Defendant Heyrman refused to allow Plaintiff to shower because Plaintiff would not shower in a stall where Defendant Heyrman could see him and subjected Plaintiff to verbal harassment, and that Defendant Miles exposed Plaintiff's belongings so that they could be seen by his roommate.  On July 29, 2013, Defendant Ross disengaged the locking mechanism on Plaintiff's cell door, which Plaintiff claims could have allowed other prisoners to steal from him or assault him.  On August 3, 2013, Defendant Holman failed to take corrective action after Plaintiff complained that his cellmate had soiled the inside of his cell with urine.  Finally, Plaintiff alleges that on October 4, 2015, Defendant Jaykka ordered Plaintiff to leave the dining hall before he could finish his meal.  As stated above, in order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant

official acted with "'deliberate indifference' to [his] health or safety." *Id.* Because these allegations do not rise to the level of such a deprivation, they do not state a claim under the Eighth Amendment.

Plaintiff also asserts that Defendant Machulis wrote a false retaliatory misconduct ticket on him. However, Plaintiff concedes that he was found guilty of the charge following a hearing by Hearing Officer Groat. A prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *See Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013) (holding that a factual finding in a major misconduct proceeding has preclusive effect and is not subject to challenge in a § 1983 action). Therefore, this claim is properly dismissed.[1]

Plaintiff also claims that Defendants Mattson, Deatsman, Miles, Immel, O'Dell, Bowerman, Hoffman, and Heberg all wrote false misconduct tickets, failed to investigate the charges properly, or improperly found Plaintiff guilty of the misconducts. However, as noted above, a prisoner's claim that he was falsely accused of a major misconduct is barred where there has been a finding of guilt. *Peterson*, 714 F.3d at 917. Plaintiff concedes that he was found guilty of each of the misconduct tickets following a hearing. Moreover, Plaintiff concedes that he refused to sit down when ordered to do so by Defendant Miles, which was the reason he received one of the misconduct

---

[1]Although Plaintiff does not list Hearing Officer Groat as a defendant in this case, he claims that Groat violated his due process rights by finding him guilty of the misconduct despite a lack of evidence. Plaintiff alleges that Groat is a hearing officer. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* MICH. COMP. LAWS § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* MICH. COMP. LAWS § 791.252(k). There are provisions for rehearings, *see* MICH. COMP. LAWS § 791.254, as well as for judicial review in the Michigan courts. *See* MICH. COMP. LAWS § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988). As such, they are entitled to absolute judicial immunity from inmates' § 1983 suits for actions taken in their capacities as hearing officers. *Id.*; *and see Barber v. Overton*, 496 F.3d 449, 452 (6th Cir. 2007); *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007); *cf. Pierson v. Ray*, 386 U.S. 547, 554-55 (1967) (judicial immunity applies to actions under § 1983 to recover for alleged deprivation of civil rights).

tickets.  Therefore, Plaintiff's claims regarding the allegedly false misconduct tickets are properly dismissed.

Plaintiff claims that Defendants Zummer and Nietzel improperly withheld his legal and personal property "as a means of effectuating and perpetrating [D]efendant Machulis' retaliatory efforts."  In addition, Plaintiff claims that Defendant Lesatz had him transferred to administrative segregation in retaliation for his litigious activities on August 14, 2012.  Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's assertion of retaliatory motive on the part of Defendants Zummer, Nietzel, and Lesatz is entirely conclusory.  The court notes that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive."  *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

> In *Muhammad* [*v. Close*, 379 F.3d 413 (6th Cir. 2004)] the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'"  *Id.* at 418 (quoting *DiCarlo v. Potter*, 358 F.3d

-19-

> 408, 422 (6th Cir.2004) (emphasis added).   Even if temporal
> proximity may in some cases create an issue of fact as to retaliatory
> motive, it would only be sufficient if the evidence was "significant
> enough."   Plaintiff's conclusory and ambiguous evidence is not
> "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010) (emphasis in original).  Therefore, these claims are properly dismissed.

Plaintiff also claims that the withholding of his property violated his right of access to the courts because it prevented him from formulating a defense to the misconduct ticket or from filing a meritorious appeal.  In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts.  While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively.  *Lewis v. Casey*, 518 U.S. 343 (1996).  Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance.  *Id.* at 351 (1996).  Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards.  *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

Further, in order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).  The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

-20-

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

Plaintiff fails to allege how the lack of access to his legal and personal property affected his ability to appeal his misconduct conviction. Because Plaintiff's allegations regarding the need for access to his property are entirely conclusory, his access to courts claim is properly dismissed.

Plaintiff also appears to be claiming that the withholding of law books that he had ordered from the law library on September 2, 2012, by Defendant Barney violated his right of access to the courts. However, because Plaintiff has failed to allege that the denial of these books actually injured him in his pursuit of a direct appeal, habeas corpus action, or civil rights action, this claim is properly dismissed.

Plaintiff contends that his transfer from SRF to LMF by Defendants Winn, Zummer, and Norman was retaliatory. However, "[s]ince prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter

a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill*, 630 F.3d at 468.

Transfers to the general population of another prison are not typically an adverse action. *See Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) (collecting cases); *see also Hill*, 630 F.3d at 473; *Thaddeus-X*, 175 F.3d at 398. Plaintiff does not allege that he was transferred to a lock-down unit at the new facility or that he was confined to administrative segregation. Plaintiff's only claim is that LMF is known for unconstitutional treatment of prisoners. However, Plaintiff fails to allege any specific facts showing that his transfer constituted an adverse action. Therefore, Plaintiff's claim that his transfer was retaliatory is properly dismissed.

Plaintiff claims that his due process rights were violated when Defendant Cobb destroyed his ac adaptor, when Defendant Mattson took his ID for no reason, and when Defendant

Bowerman refused to give Plaintiff his store order, for which Plaintiff had already paid.  Plaintiff's due process claims are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  MICH. DEP'T OF CORR., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  MICH. COMP. LAWS § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  MICH. COMP. LAWS § 600.6419(1)(a).  The

Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, Plaintiff's loss of property claims are properly dismissed.

Plaintiff further claims that Defendant JPay charged his mother $11.00 for a money transfer and that it took one week for him to receive the money. However, Plaintiff fails to allege any facts showing that Defendant JPay violated his constitutional rights. Therefore, Defendant JPay is properly dismissed from this action.

Plaintiff contends that Defendants Gerth, Young, Schertz, and Thoma retaliated against Plaintiff for his use of the grievance procedure by denying him meals, that Defendant Schertz "physically abused" him, and that Defendants Henley, Miles, and Fielding assaulted Plaintiff by closing his cell door on him in violation of the Eighth Amendment. The court concludes that these claims may not be dismissed on initial review as frivolous.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Heyns, Russell, Kinross Complex Store Employees Unknown Parties, Rapelje, Winn, Zummer, Machulis, Norman, Bauman, Immel, Lesatz, Sprader, Lindenmuth, Nelson, Konrad, Salo, Harris, Denman, Hoffman, Trierweiler, Maki, Rutter, O'Dell, Hursch, Livermore, Miron, Parkilla, Price, Weberg, Bohm, Cobb, Perala, Kurth, Palomaki, Lare, Deatsman, Mattson, Heyrman, Anderson, Jaykka, Bowerman, Barney, Vanderscheagan, Wilkins, Lancour, Ross, Holman, Nietzel, Access Secure Pak, Alger County, JPay, and Unknown Parties responsible for Prisoner Trust

Accounts will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b), and 42 U.S.C. § 1997e(c).  The Court will serve the complaint against Defendants Gerth,

Young, Schertz, Thoma, Henley, Miles, and Fielding.

        An Order consistent with this Opinion will be entered.


Dated: <u>July 13, 2015</u>                <u>/s/ Robert Holmes Bell</u>
                                      ROBERT HOLMES BELL
                                      UNITED STATES DISTRICT JUDGE